Losing, J.,
dissenting:
At the time of the sale, September 9,1862, Burbridge & Co. were, and for more than two years had been, the factors of Leo L. Johnson for his Webster plantation, and were in advance $131,366 67, for supplies and money furnished to it.
The property sold was the entire crop of the plantation, and $5,000 of the price was paid at the agreement of sale, by which the property was to be delivered to the buyer on the plantation, to be transported at his risk and cost to New Orleans, where it was to be measured and weighed, and the residue of the price paid according to the quantities so ascertained.
The order for its delivery is in these words:
“ New Orleans, September 9,1862.
“The overseer on the plantation of Leo L. Johnson will please deliver to the order of Robert H. Montgomery the entire crop of sugar, molasses, and rum contained in the sugar-house and purgeries, &c., on said plantation, the'same having been sold to him this day.
“J. W. BURBRIDGE & 00.,
“ Per T. D. HARRIS.”.
And I think that from the date of that order the property in the sugars, &c., was vested in the buyer, because the evidence shows that from its date, the property, by the agreement between the parties, was to be at the risk of the buyer. And that is the badge of ownership.
In the law of sales, at the common law and the civil law, there was this difference: By the common law the property in the thing sold passed from the seller to the buyer, upon the specification or ascertainment of the thing sold; while, at the civil law, iShe property passed from the seller to the buyer upon the ascertainment of the thing sold, and of the price; so that where, as here, the sale was of an entire quantity by weight or measure, the thing sold being specific, and the weighing or measuring being only to ascertain the price; the weighing-or measuring was at the common law immaterial to the change of property; (Crofoot v. Bennett, 2 Comstock, 258; 2 Hurlstone and
*667 Coltman, 200, Turley v. Bates;) while at the civil law, it was essential to it". (Pothier on Sales, No. 308.)
The law of Louisiana (C. C., 3433) adopts the rule of the civil law as its general rule. But by that law and its authorities parties may by their agreement make a special rule for themselves, which will govern the transaction between them. They may agree that the property shall vest in the buyer before or without measuring or weighing, and when they make such an agreementand thus waive the weighing and measuring as a condition precedent to the change of property, the agreement itself is tantamount to the weighing and measuring, and of the same legal effect; and the property is changed from the date of the agreement.
And such agreement, that the property shall be-changed before or without measuring or weighing, may be either express or implied from circumstances, and the reports of Louisiana furnish instances -of both. Thus in the case of Clark et al. v. Norwood et al., (19 Lou. An. R., 116, 1867,) the sale was of 100 bales of cotton, of the average weight of 400 pounds, then “being stored and to be stored” on the (seller’s) plantation, and which he was to transport' and deliver at New Orleans; and the parties expressly agreed in writing to waive the weighing and delivery as a condition to complete the sale. The cotton was burned on the plantation before it was weighed or delivered. The court held that the property in the cotton had vested in the buyer, and said, “It is clear from the words of the act, and its general tenor and import, that from and after the signing of the instrument, the sale was complete, the hundred bales of cotton delivered, and at the risk of the purchasers.” And the loss was held to be theirs.
Here the decision was that the property was changed by the agreement, because therefrom it was at the risk of the buyers, and if that is the distinctive consequence of a complete date, it is the conclusive evidence of it.
In the case cited the agreement was express. In the case of Goodwin v. Pritchard, (10 Lou. An. R., 249,) it was claimed tobe inferable from circumstances. The sale was of a crop of molasses “ then in process of- manufacture.” The molasses was burned on the plantation. The defendent relied on the evidence of letters to show that the burden of insurance was to be on the buyer. The court-, after stating that the sale being of the *668 entire crop was for a specific thing, and that that did not remove it from the rule as to weighing and measuring, said, “ It remains only to consider the special circumstances upon which the defendant relies as withdrawing the case from the operation of the ordinary rule governing sales by weight. And in the outset of this inquiry it' must be borne in mind that although parties may by their agreement withdraw their contract from the rule of law we have just been considering, such agreement should not be let in unless where there is no doubt of its existence. If the agreement rests on inference, the inference should be clear, cogent, and convincing. And the court then decided the case against the defendant on the single ground that the evidence did not furnish the’inference that the burden of insurance was to be on the buyer.
This case shows that, by the law of Louisiana, parties to a sale may by their agreement change the property and vest it in the buyer before measuring or weighing; that such agreement may be implied from circumstances, and will be implied from the fact that the property was to be insured by the buyer, and was to be at his risk, according to the maxim of the civil law and all other law, “res perit domino.”
Such being the law of Louisiana, I think the question here is whether the evidence shows the intent of the parties that the property was to change from the seller to the buyer before the weighing and measuring; and I think it does, because it shows that the property was to be delivered to the buyer before the weighing and measuring, and to be at his risk, and the burden of insurance and cost of transportation, &c., was to be on him.
T. Harris, who made the sale to the claimant, thus testifies on his cross-examination by the defendants, being asked in reference to this sale;
“ Question. Did the fact that the sugar and molasses, which are the subject of the contract, were outside the then lines of the United States forces have an effect upon the value of the ■ same, or the price at which they were sold
He answered:
“Answer. To a certain extent it'was; for we always sell sugar and molasses on a plantation at a much lower price than we do in the city, owing to the fact that no charges of transportation, insurance, &c., are paid by the seller.”
I think this evidence is direct and positive that in this trans *669 action, by and from tbe bargain between the parties, the sugars, &c., were to be at the risk of the buyer, and that the cost of transportation and the burden of insurance, i. e., the risk of loss or injury of the property, were on him and not on the seller, and that this regulated the price between them. And if the buyer had the risks, he had the rights of property, for they must go together. And I think that the intent and understanding of the parties, that the property vested in the buyer by and from the agreement of sale, is shown by their action on it.
The part of the sugars sold at New Orleans by the United States brought a higher prie'e than the contract price; and the whole price obtained at the sale was adjudged by the commission and paid to the claimant. In the settlement of this between the claimant and Burbridge & Co., they took their original contract price, and the advance or profit beyond the contract price was taken by the claimant. And this is stated by Harris, who transacted the business and received the money.
It was urged at the bar that the contract provided as follows: “ The weight and quantity to be determined at the time and upon the delivery thereof at New Orleansand again, “ the balance to be paid by said Montgomery at each future delivery of said sugar,” &c. And it was contended on these provisions that the delivery by the seller to vest the property in the buyer, was to be at New Orleans. But this could not be the intent, for under the contract the seller could not deliver the property at New Orleans, for he would not have it to deliver, as it would be m the possession of the buyer under the delivery at the plantation according to the order given for that, and on its security he would have paid $5,000 and the cost of transportation, and assumed the burden of its insurance and its risk of loss or injury. And I think the delivery referred to in the provisions of the contract cited was the delivery by the buyer at the scales, to ascertain the weight and residue of the price.
On this part of the case, I think, for the reasons stated, that when the property was seized by the United States, it was .at the risk of the claimant, by the agreement between the parties to the sale, and was therefore the claimant’s property, as between him and Leo L. Johnson, and all claiming under or through Leo L. Johnson and the United States have only his title.
It was objected for the defendants, that Burbridge & Go. had *670 not a right to sell the property, as factors, because it was not in their possession.
It is true that, at the common law of principal and factor, possession is essential to the factor’s lien; but the right of Buxbridge & Co. to sell does not rest on that law, but on the special contract between them and Leo L. Johnson, by which the crops were to be sold by them, and were appropriated to the advances made on their security. And in equity this contract gave a lien with, the jus disponendi, and hypothecated the crops to Burbridge & Co., according' to the contract, of which their sale was only the execution.
In equity an agreement for a lien makes it as between the parties and all claiming under them; and all that is necessary is that the fund and the debt, and the appropriation of one to the other, should be certain.
Mitchell v. Winslow, (2 Story R., 644,) Justice Story said: a It seems to me the clear result of all the authorities, that whenever the parties by their contract intend to create a positive lien or charge, either on real or personal property, whether then owned by the assignor or not, or if personal property, whether it is then in being or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor acquires a title thereto against him, and all persons asserting a title thereto under Mm, either voluntarily or with notice or in bankruptcy.” And on this ground rests and is administered in equity the relation between planters and those factors who advanced money on the security of crops to be sold by them. And the rules that govern the commercial agency between principals and factors, at the common law, have nothing to do with it.
. In Simonds et al. v. Hibbert, (1 R. & M., 719,) the facts were that the plaintiffs, merchants in New York, agreed verbally with Mr. Tharp, a planter in the English West Indies, that they should send to him supplies for his plantation and receive the crops for sale to reimburse them. This was acted on for some years, till Mr. Tharp went to England, and afterward by his agent on his plantation, till Mr. Tharp’s death, and after that by the trustees under his will, until war broke out between England and the United States, when the crops were sent to England and sold there. After the war, Simonds & Oo. brought their bill in equity in London, to be paid the balance due them *671 from tbe proceeds of tbe crops wbicb were paid into court. And it was beld that tbe plaintiffs were entitled to recover, and bad a lien on tbe produce of tbe plantation to wbicb tbe credit was given. And tbe precise point decided is thus stated in tbe marginal note: “ Lien established against tbe produce of West India estates, in respect to supplies furnished to tbe estate from tbe course of dealing, and tbe conduct of tbe parties.”
And a like decision was made in tbe case of Sullivan et al. v. Tuck, executor of Bowie, (1 Maryland Decisions, 59.) Tbe facts were that tbe plaintiffs agreed with Bowie to become tbe agents for tbe sale of bis crops, and to advance him money, for wbicb they were to be indemnified from tbe crops in band and those of 1847.' The evidence of tbe contract consisted principally of letters written by Bowie to tbe plaintiffs, in which be promised to indemnify them for their advances by forwarding tbe crops to them, that their claim might be satisfied from tbe proceeds. At Bowie’s death, a balance was due to tbe plaintiffs, and tbe executor took possession of tbe crops.
Tbe suit was by a bill in equity, and tbe claim was resisted on tbe ground that the plaintiffs bad no better claim to tbe proceeds of tbe crops than any other creditors. Tbe chancellor, after stating that tbe claim could not be supported on tbe common law of principal and factors, as tbe factors bad no possession, said: “It is perfectly manifest that all tlie transactions between them were founded on tbe express promise on tbe part of Mr. Bowie to send them bis produce then in bis bands, or growing, or to become available in 1848 f and tbe decree was for tbe plaintiffs, according to tbe prayer of tbe bill, wbicb ivas for a specific performance of tbe contract.
And I think these cases decide that in contracts like this, growing out of tbe relation of planters and factors, tbe crops or their proceeds in tbe possession of tbe planters, or those claiming under them, are bound in equity for tbe advances made and tbe specific performance of tbe contract.
And I think tbe evidence shows that Leo L. Johnson bad-authorized Messrs. Burbridge & Go. to sell tbe crop. This is testified to by Harris, who was tbe confidential and managing clerk of Burbridge & Co., and managed their business in tbe absence of Mr. Burbridge at tbe North, and was thus in a position to know tbe fact. For the authority given, be referred to letters of Mr. Johnson; and on cross-examination be was asked *672 to produce tbe letter, and said be would do so. After an adjournment be testified that be bad searched for tbe letters and could not find them. It was objected for tbe defendants at tbe trial that Harris did not state in bis deposition when and where he looked for tbe letters; but be was not asked that, and if tbe defendants wished to have that, they should have asked it on bis cross-examination.
Then Burbridge & Co. were authorized to make tbe sale by tbe custom of New Orleans, under which it is proved that they acted ; and under which, it would have been presumed, they acted, if it bad not been proved.
Tbe custom proved, as between planters and factors, was, that when tbe factor undertook tbe business of a plantation, tbe amount of money to be advanced by him was fixed; that tbe crops were to be sold by him when and as be saw fit, with or without direction or advice from tbe planter, who bad no remedy if be directed tbe factor not to sell but wait for a rise, and tbe factor sold and afterward arise took place) though tbe planter could, if be was able, pay off bis indebtedness and change bis merchant. And, under tbe custom, tbe crops were as often sold on tbe plantation as after they bad been transported to tbe city.
And it was proved that, at tbe time of tbe sale, Burbridge & Co. were in advance to Leo L. Johnson in tbe sum of $131,366 67, for supplies and money furnished during their factorship.
And I think tbe custom, as proved, covers tbe whole case. It establishes tbe right of Burbridge & Co. to sell tbe crop before its possession by them and while it was on tbe plantation. And it makes such a sale valid against Leo L. -Johnson, with or without bis assent to it; and if it was a valid sale against him, it is a valid sale against tbe United States, who have only bis title.
It was objected on tbe part of tbe defendants that tbe custom was not proved. It rests on tbe evidence of a single witness, Harris, but bis testimony is positive and clear and bis means of knowledge ample; be is not'impugned, and no conflicting testimony is offered. And tbe custom be testifies to is reasonable, and arises naturally out of tbe circumstances of planters and factors; and tbe cases cited show like contracts growing out of like circumstances; besides, tbe existence of such a *673 mode of dealing between planters and factors in the southern States is a matter of common knowledge.
It was objected for the defendants that the sale violated the non-intercourse laws; Leo L. Johnson being a rebel and the property being in the rebel territory.
The fact is clear on the evidence, that the sale, and the circumstances on which it is claimed, led to no intercourse with Leo L. Johnson on rebel territory and required none. But the answer is that the sale was made by loyal citizens in loyal territory, for Burbridge & Company were quasi owners, and sold in their own right vested in them by the original contract, which was lawful when made, and hypothecated the crop to them for their advances made and due when the sale was made. They had thus a power coupled with an interest; and they had the same right to sell the crop and reimburse these advances that a mortgagee has to sell the property mortgaged for the mortgage debt. And at the time of the sale the assent of Leo L. Johnson was immaterial to it, and he was not, in fact, a party to the contract of sale, which was valid without, and in despite of, any action of his-.
If the sugar and molasses were in rebel territory, the sale was made in New Orleans months after its capture, and the proclamation of General Butler requiring loyal citizens to follow their usual avocations as a means of preserving order and quiet, and what passed by the sale was the right of property in the sugar, molasses, &c., which between the parties passed without delivery by the laws of Louisiana as well as the common law. And I am not aware that it has been held that the non-intercourse laws, or any other, precluded citizens in the loyal States from passing between themselves the right of property in merchandise which' was in the disloyal States.
It was objected that Mr. Burbridge was disqualified as a witness by his interest. But he was not interested in the event of the suit, for he would have no lien upon or title to the money recovered here. He was an unpaid vendor, with no other interest than every such vendor has that his debtor should be in funds. He is asked a direct question and gives a direct answer. He is asked if he expects to be paid the balance due him for these sugars, if the claimant recovers, and he answers, “Yes.” But that does not prove or indicate that his payment is conditioned on the claimant’s recovery here, and therefore does *674 not prove a disqualifying interest. And if it suggests that the claimant’s recovery here is the only means of paying his debts,, that no more goes to the disqualification or credibility of Mr. Bur-bridge than of any other creditor of the claimant disconnected with this transaction.
And as I have considered this case, Harris’s testimony proves all that is necessary to sustain it. He proves that Burbridge & Co. were the factors of Leo L. Johnson for the Webster plantation, and according to that relation and the custom of New Orleans between planters and factors and the contract between Leo L. Johnson and Burbridge & Go., they were to advance him money and have the sale of his crops to reimburse them : that at the time of the sale they were in advance $131,360 78 ; and that the sale in question here, of the crop on the plantation, was made according to the custom and to repay those advances. And the testimony of Mr. Burbridge is merely cumulative on this.
The privileges created by the statutes of Louisiana are statute liens operating in invitum, and have nothing to do with liens by contract.
The remaining objections made by the defendants, of the statute of limitations and that the claimant was a British subject, have been overruled in other cases in this court.
On the whole case, I think the claimant is entitled to recover.
Peck, J., agreed with the opinion read by Nott, J.
Milligan, J., agreed with the opinion read by the Chief Justice.